UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HATTIE L. CHRISTMAS | CIVIL ACTION |
| VERSUS | NO. 14-1117 |
| MENTOR ABI, LLC d/b/a<br>NEURORESTORATIVE LOUISIANA | MAGISTRATE JUDGE<br>JOSEPH C. WILKINSON, JR. |

**ORDER AND REASONS ON MOTION**

Plaintiff, Hattie L. Christmas, alleges that her former employer, Mentor ABI, LLC d/b/a NeuroRestorative Louisiana ("NeuroRestorative"), discriminated against her based on her race (African-American), color and gender by paying her less than similarly situated Caucasian and/or male employees; requiring her, unlike Caucasian employees, to patrol dark roads alone at night; denying her training and opportunities for advancement that were provided to Caucasian and male employees; and terminating her employment, all in violation of Title VII, 42 U.S.C. § 2000e2(a)(1). Complaint, Record Doc. No. 1. This matter was referred to a United States Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon written consent of all parties. Record Doc. No. 8.

NeuroRestorative filed a motion for summary judgment on all of plaintiff's claims. The motion is supported by the declaration under penalty of perjury of Patrick Rhodes, Program Director and plaintiff's supervisor during the relevant time period; excerpts from plaintiff's deposition transcript; and some verified documentary exhibits. Record

Doc. No. 34. Christmas filed a timely memorandum in opposition supported by her entire deposition transcript, the affidavits of Nicole Quillan and Kimberly L. Moore, and documentary exhibits. Record Doc. No. 36. The deposition transcript that plaintiff submitted contained <u>only</u> the odd-numbered pages. Plaintiff's Exh. 6. As ordered by the court, Record Doc. No. 45, Christmas filed the complete transcript in the record at Record Doc. No. 46. Thus, all references in this decision to Plaintiff's Exhibit 6 refer to the complete transcript at Record Doc. No. 46. NeuroRestorative received leave to file a reply memorandum. Record Doc. Nos. 40, 42, 43.

Having considered the complaint, the record, the arguments of the parties and the applicable law, and for the following reasons, IT IS ORDERED that defendant's motion for summary judgment is GRANTED IN PART AND DENIED IN PART, as follows.

## ANALYSIS

A.   <u>Standards of Review</u>

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56, as revised effective December 1, 2010, establishes new procedures for supporting factual positions:

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Thus, the moving party bears the initial burden of identifying those materials in the record that it believes demonstrate the absence of a genuinely disputed material fact, but it is not required to negate elements of the nonmoving party's case. Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to [a particular material] fact." Advisory Committee Notes, at 261.

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). No genuine dispute of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must cite to particular evidence in the record to support the essential elements of its claim. Id. (citing Celotex, 477 U.S. at 321-23); accord U.S. ex rel. Patton v. Shaw Servs., L.L.C., 418 F. App'x 366, 371 (5th Cir. 2011). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Celotex, 477 U.S. at 323; accord U.S. ex rel. Patton, 418 F. App'x at 371.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998); accord Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005). "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations

4

. . . to get to a jury without any "significant probative evidence tending to support the complaint."'" Nat'l Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original); accord Duron v. Albertson's LLC, 560 F.3d 288, 291 (5th Cir. 2009).

    B.    The Undisputed Material Facts

Solely for purposes of the pending motion for summary judgment, the following facts are accepted as undisputed, except where an evidentiary conflict is noted. NeuroRestorative provides treatment, care and assisted living facilities for individuals with brain and spinal cord injuries and other neurological challenges. Christmas worked as a Life Skills Trainer at defendant's Hammond facility for more than four years until defendant terminated her employment on August 14, 2013. She provided hands-on care for the residents (a/k/a clients), including assisting with bathing, dressing, transferring, ambulation, medication monitoring, charting, vital signs, general housekeeping and transportation. Rhodes, a Caucasian male, was the Program Director and ultimate supervisor of all employees at the facility during the relevant time period.

Christmas was assigned to the 8:00 p.m. to 8:00 a.m. overnight shift throughout her employment. No supervisor was on duty during night shifts. During the late night of August 7 into the early morning of August 8, 2013, plaintiff and another African-American Life Skills Trainer, Dinah Thomas, were involved in an incident with a male resident at the Hammond facility, identified for purposes of this litigation as "J.B." Kimberly Moore, another African-American Life Skills Trainer, worked a 7:00 p.m. to 7:00 a.m. shift that same night.

Christmas was assigned to care for J.B., who repeatedly tried to elope[1] from the facility before and during her shift on August 7, 2013. Eventually, Christmas enlisted the help of Thomas, who was assigned to care for other residents, to try to prevent J.B. from leaving because plaintiff had been unable to handle him alone. Nonetheless, J.B. succeeded in leaving the house. At some point, Moore called a daytime supervisor, Julia Brown, to assist with the resident. Moore also called the police, apparently at Brown's direction. After Brown arrived at the facility, she phoned Rhodes to tell him that J.B. was sitting calmly on a neighbor's porch across the street. J.B. then re-entered the house.

On August 8, 2013, Christmas prepared an incident report regarding these events. The report is not in the summary judgment record. Rhodes avers in his declaration that plaintiff's report stated that she had tried unsuccessfully to contact him on both his

---

[1] This is the term used in the motion materials to describe leaving the facility without permission.

6

personal and his company-issued cell phones the previous night. Defendant's Exh. 1, declaration of Patrick Rhodes, at ¶ 7. Rhodes says he checked the call logs on both phones, saw no missed calls and concluded that plaintiff's statement was "inaccurate." He then decided to review the videotaped security footage from that night. Id. at ¶ 9.

According to Rhodes, the video showed "that the staff had allowed the resident to become highly agitated and had contributed to his agitation for between 1.5 - 2 hours prior to calling for assistance." Id. at ¶ 10. Rhodes states that the video showed "[unnamed] staff blocking the resident from leaving and being confrontational with him." Id. at ¶ 11. Rhodes continues:

> 12.    The video showed Ms. Christmas and a coworker directing what appeared to be at least one kick and several punches toward the resident. This physical behavior directed toward the resident by Ms. Christmas and her coworker was not accurately described in Ms. Christmas's report.
> 13.    The resident also appeared to be grabbed by the collar of his shirt and jerked backwards by Ms. Christmas and her coworker. Ms. Christmas and her coworker then began pushing and shoving the resident again.

Id. at ¶¶ 12-13.

Rhodes decided to terminate plaintiff's employment. He prepared an investigation report dated August 14, 2013, which is attached to his declaration as Exhibit A, and a Disciplinary Action Form dated August 13, 2013, to document the termination, which is attached as Exhibit B. He states in his declaration that Christmas was fired for violations of company policy in handling the situation with J.B., including but not limited

to providing false information on the incident report, failing to follow appropriate protocol and physically confronting the resident. Defendant's Exh. 1, at ¶¶ 16-18.

Plaintiff's testimony and the affidavit of Kimberly L. Moore, Plaintiff's Exh. 8, contradict some of Rhodes's statements. Christmas testified that she never hit, kicked, pushed or shoved J.B. and that she did not remember anyone yanking him by the collar. Plaintiff's Exh. 6, deposition of Hattie L. Christmas at pp. 123-24, 134, 136-37, 139-40. She testified that she tried to use the CPI[2] training she had received at NeuroRestorative to handle J.B. by placing her body in a position to prevent him from eloping and keeping her arms extended to protect herself from his attempts to hit and kick her. She stated that CPI involves putting hands on the resident. Id. at pp. 119-20.

Christmas testified that she only put her hands on J.B. when she tried to pry his hands off Thomas after he had grabbed Thomas by the breast and twisted, and when she and Thomas tried to use a CPI "lock" by placing one employee on each side of the patient and putting an arm to his back to stop him from moving away. Id. at pp. 135-37. Although plaintiff admitted that it would have violated NeuroRestorative's policy if she or Thomas had put their hands on J.B., she also said that she was trained in CPI, which calls for putting hands on the patient, id. at 166-67, and that Rhodes told the staff they

---

[2]Although plaintiff could not say what CPI means, her CPI training cards indicate that it was a nonviolent crisis intervention training program. Defendant's Exh. 2, exhibits to Christmas deposition, Record Doc. No. 34-3 at pp. 62-63.

should use CPI with J.B., who had been aggressive and an elopement risk during the previous few days.  Id. at pp. 107-08, pp. 125-26.

Christmas denied that she failed to follow protocol.  She testified that there was no protocol in place to call a supervisor and that Life Skills Trainers on the night shift routinely handled situations with residents on their own.  Id. at pp. 123-24, 130-31.

Christmas and Moore both testified that they tried to call Rhodes during the incident at the number listed on the supervisor call sheet, but were unable to reach him. Id. at pp. 142-43, 173-75; Plaintiff's Exh. 8, Moore affidavit at ¶¶ 19-22.  Moore was later told by defendant's management that the number on the call sheet was incorrect. Id. at ¶ 23.  Rhodes told Moore that the incident involving J.B. was ultimately not abuse, but that Christmas did not deserve the benefit of a second chance.  Id. at ¶ 25.

Christmas contends that Ron Kuerner, a white Life Skills Trainer also supervised by Rhodes, was not terminated in May 2013 when he committed a disciplinary infraction comparable to the one for which she was fired in August.  Kuerner had previously been disciplined for raising his voice with a client six months before the May 2013 incident. There is no evidence that Christmas was ever disciplined before she was terminated.

Moore states in her affidavit that two of defendant's Life Skills Trainers who witnessed the incident involving Kuerner in May 2013 told her on the day of the incident that Kuerner had verbally abused, slapped, shoved and kicked a resident while they were on an outing at a movie theater.  Plaintiff's Exh. 8, Moore affidavit at ¶¶ 11-13.  Another

9

Life Skills Trainer, Nicole Quillan, states that the same two witnesses told her that Kuerner had punched the resident in his stomach and his back. Plaintiff's Exh. 7, affidavit of Nicole Quillan, at ¶¶ 6-8. Moore's and Quillan's statements about what other employees told them about events that the employees witnessed are not hearsay because the statements are offered against defendant and were made by its employees on a matter within the scope of that relationship while it existed. Fed. R. Evid. 801(d)(2)(D).

Moore saw the resident return from the movie outing and saw "severe bruising" on his body. Plaintiff's Exh. 8, Moore affidavit at ¶ 14. Kuerner was sent home for the rest of that day. He was disciplined with a final written warning that included counseling, suspension without pay for the time he had been sent home and one additional day, and some re-training. Plaintiff's Exhs. 1, 2, 3 (filed under seal, Record Doc. No. 39).

Moore spoke to Rhodes about Kuerner's behavior in May 2013. Rhodes told her that he had given other employees a second chance when they had abused residents and broken company policies, and that he would give Kuerner a second chance and would not fire him. Plaintiff's Exh. 8, Moore affidavit at ¶¶ 12-14, 16.

  C. <u>Plaintiff Has Waived Some of her Claims</u>

Christmas does not respond in her opposition memorandum to defendant's arguments that she cannot establish a prima facie case of discrimination as to four types of conduct alleged in her complaint. She does not address defendant's arguments that

(1) she was never denied a promotion or an opportunity for promotion because defendant had no job openings for which she could have applied or did apply, (2) she has no competent summary judgment evidence that she was paid less than male or white employees with the same or lesser qualifications for the same job, (3) she testified that she was not alleging any discrimination based on sex and she therefore has no evidence of sex discrimination, and (4) the denial or unequal provision of training opportunities and the requirement that she patrol dark roads alone at night are not adverse employment actions as a matter of law, when, as here, defendant's action leads to no loss of responsibility, pay or benefits.

A party's failure to brief an argument in response to a summary judgment motion waives that argument. A plaintiff's "complete failure to raise any legal or factual issue regarding that claim in his Opposition [to defendant's summary judgment motion] constitutes a waiver of the issue." Ledet v. Fleetwood Enters., Inc., 245 F.3d 791, 2000 WL 1910173, at *4 (5th Cir. 2000) (citation omitted); accord McDaniel v. Shell Oil Co., 350 F. App'x 924, 927 (5th Cir. 2009); Essinger v. Liberty Mut. Fire Ins. Co., 529 F.3d 264, 271 (5th Cir. 2008); Blackwell v. Laque, 275 F. App'x 363, 366 n.3 (5th Cir. 2008). Therefore, Christmas is deemed to have abandoned her claims of discrimination based on these four contentions in her complaint.

Even if plaintiff had not waived her arguments regarding the assignment to patrol dark roads alone and the unequal provision of training, task assignments and denials of

11

training are not actionable employment actions. To establish a prima facie case of discrimination, Christmas must show that she suffered an "adverse employment action."

> [A]dverse employment actions consist of "ultimate employment decisions" such as hiring, firing, demoting, promoting, granting leave, and compensating. [A]n employment action that does not affect job duties, compensation, or benefits is not an adverse employment action.
> . . . .
> This court has recognized that . . . a change in work schedule and request that an employee perform two additional tasks did not rise to the level of an adverse employment action . . . . Other circuits similarly agree that a mere inconvenience or an alteration of job responsibilities will not suffice. . . .

Thompson v. City of Waco, 764 F.3d 500, 503-04 (5th Cir. 2014) (quotations and citations omitted). Plaintiff's assignment to patrol a dark road at night on one occasion, which she testified that she refused to do without suffering any negative employment consequences, Plaintiff's Exh. 6, Christmas deposition at pp. 148-49, 176, does not rise to the level of an adverse employment action.

Similarly, a denial or unequal provision of training is not an adverse employment action in the absence of evidence that it would result in a change of employment status, benefits or responsibilities. Munoz v. Seton Healthcare, Inc., 557 F. App'x 314, 320-21 (5th Cir.), cert. denied, 135 S. Ct. 199 (2014) (citing Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 407 (5th Cir. 1999)); accord Martin v. Lennox Int'l Inc., 342 F. App'x 15, 18 (5th Cir. 2009); Bell v. Bank of Am., 171 F. App'x 442, 443 n.4, 444 (5th

Cir. 2006); Roberson v. Game Stop/Babbage's, 152 F. App'x 356, 361 (5th Cir. 2005). Christmas has proffered no such evidence.

In addition, plaintiff's testimony and failure to identify any evidence supporting her claims of sex discrimination or discriminatory failure to promote mandate summary judgment for NeuroRestorative on these two claims. Christmas testified that she does not allege any discrimination based on her sex. Plaintiff's Exh. 6, Christmas deposition at 182. She also testified that she was never denied a promotion or an opportunity for promotion because defendant had no job openings for which she could have applied. Id. at pp. 154-55, 180. She therefore suffered no adverse employment action regarding sex discrimination or promotion.

Therefore, defendant's motion for summary judgment is granted in part and her sex discrimination claim is dismissed with prejudice. Her claims of race and color discrimination based on alleged failure to promote, unequal pay, the denial or unequal provision of training opportunities, and the requirement that she patrol dark roads alone are also dismissed with prejudice.

### D. Material Facts Are in Dispute as to Plaintiff's Claim of Discriminatory Termination

Plaintiff has the initial burden of proving a prima facie case of discriminatory termination by a preponderance of the evidence. She can satisfy this burden with circumstantial evidence that (1) she was a member of the protected class, (2) she was

qualified for the position, (3) her employment was terminated and (4) she was replaced by an individual of a different race,[3] or defendant treated similarly situated individuals of a different race more favorably than it treated her.  Lawson v. S. Components, Inc., 410 F. App'x 833, 835 (5th Cir. 2011) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Machinchick v. PB Power, Inc., 398 F.3d 345, 350 (5th Cir. 2005); Bryan v. McKinsey & Co., 375 F.3d 358, 360 (5th Cir. 2004)).

It is undisputed that Christmas meets the first three elements of a prima facie case and that she was replaced by an African-American woman, so she cannot establish the fourth prong in the first possible way.  NeuroRestorative argues that she also cannot establish the fourth prong because she lacks evidence that defendant treated similarly situated Caucasian individuals more favorably than it treated her.  Plaintiff responds that material facts are in dispute whether NeuroRestorative treated Kuerner better than it treated her in similar circumstances.

> In work-rule violation cases, such as the instant case, a Title VII plaintiff may establish a prima facie case by showing **either [1] that he did not violate the rule[,] or [2] that, if he did, white employees who engaged in similar acts were not punished similarly**.  To establish a prima facie case in this [second] manner, [plaintiff] must show that . . .

---

[3]Plaintiff's complaint alleges both race and color discrimination.  Typically, the latter refers to discrimination by a member of one race against another of the same race based on their relative skin shades.  Although that type of discrimination is not at issue here, color discrimination is subject to the same burden-shifting analysis as race discrimination.  Nettle v. Cent. Okla. Am. Indian Health Council, Inc., 334 F. App'x 914, 926 (10th Cir. 2009); Williams v. Wendler, 530 F.3d 584, 587 (7th Cir. 2008).  To the extent that Christmas asserts color discrimination, I refer in the remainder of this decision only to race, which I understand to encompass her claims of color and race discrimination.

employees [who are not members of his protected class] were treated differently under circumstances "nearly identical" to his. The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared **held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories**. Moreover, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions, because [i]f the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis.

However, we have made clear that "nearly identical" is not synonymous with "identical." . . . For example . . . [e]ach employee's track record at the company need not comprise the identical number of identical infractions, albeit these records must be comparable.

Turner v. Kan. City S. Ry., 675 F.3d 887, 892-93 (5th Cir. 2012) (quotations and citations omitted) (underlined emphasis by the Fifth Circuit; bold emphasis added).

Christmas argues both that she did not violate defendant's rules and that, if she did, Kuerner engaged in similar acts but was not punished similarly. Viewed in the light most favorable to plaintiff, there is evidence from which "a reasonable juror could certainly look askance at" defendant's contention that Christmas committed all of the egregious acts on which Rhodes says he relied in deciding to fire her, or that the acts were not so egregious as he states in his declaration. Burton v. Freescale Semiconductor, Inc., No. 14-50944, 2015 WL 4742174, at *9 (5th Cir. Aug. 10, 2015).

This evidence consists of Rhodes's investigation report, the Disciplinary Action Form, plaintiff's testimony and the affidavits of Moore and Quillan. First, the statements in the contemporaneous investigative report, Exh. A attached to Defendant's Exh. 1, are more ambiguous than those in Rhodes's declaration submitted to this court. When describing the physical acts of kicking, hitting, pushing, shoving and yanking the resident by his shirt collar that Rhodes says he observed on the videotape, the investigative report refers to "<u>the</u> staff member," "<u>one</u> of the employees" and "her co-worker" in the singular, without naming the employee who committed each repugnant act. <u>Id.</u> (emphasis added). Yet, in his declaration submitted to the court, Rhodes lumps Christmas and Thomas together as having committed all of the physical acts jointly.

Second, Rhodes's statements in his investigation report are more equivocal than those in his declaration about whether Christmas kicked or punched J.B. Rhodes stated in the investigative report that the videotape "showed what <u>could be a kick</u> of the resident from the [unnamed] staff member and also <u>potential</u> blows with a fist [from the same or a different staff member? at the same or a different time?], but the resident was <u>out of sight of the camera to be able to verify</u> that a kick or punch was landed on him." <u>Id.</u> (emphasis added).

The Disciplinary Action Form that Rhodes prepared on August 13, 2013, states that plaintiff "attempted to block the client from leaving the facility" and she "eventually was noted to have been pushing, shoving and even appeared to be kicking at the client."

16

Exh. B to Defendant's Exh. 1. This contemporaneous document does <u>not</u> support Rhodes's declaration that Christmas directed "several punches" toward the resident and grabbed him by the collar of his shirt and jerked him backwards.

The investigative report and Disciplinary Action Form certainly are not exculpatory of plaintiff. However, Rhodes admitted that he could not see clearly what happened on the videotape. There are inconsistencies between his statements in his investigation report and the Disciplinary Action Form, on the one hand, and the statements in his declaration signed almost one year later, which is the evidence that defendant wants the court to accept as undisputed. Plaintiff has presented competent testimony from herself and Moore about the events of that night, their attempts to contact Rhodes at the phone number provided by defendant, the lack of any protocol regarding calling a supervisor, the CPI training that she received that involves putting her hands on an aggressive client and the lack of any other training in how to handle potential elopement and aggression, which contradict Rhodes's statements. Viewing the evidence in the light most favorable to plaintiff, as required when deciding a summary judgment motion, I find that material fact issues and credibility questions exist concerning whether Christmas violated work policies in all the ways asserted by defendant. <u>Parker v. State of La.</u>, 323 F. App'x 321, 324, 328 (5th Cir. 2009).

NeuroRestorative also argues that Christmas has no evidence that white employees who engaged in similar acts were not punished similarly because, defendant contends,

17

the circumstances of Kuerner's misconduct were not "nearly identical" to hers. I find that material fact issues are in dispute whether their respective disciplinary histories and misconduct were sufficiently comparable to raise an inference of discrimination. Six months before the movie theater incident, Rhodes gave Kuerner a written "verbal warning" for raising his voice, "effectively (in effect) yelling back and forth with a client." Plaintiff's Exh. 1 (filed under seal, Record Doc. No. 39). There is no evidence that Christmas was ever disciplined during her employment. As a result of the May 2013 movie theater incident that included cursing at and physical abuse of a resident and violation of company policy, Kuerner received a suspension, a written warning and a third chance to continue working. He was not terminated. Plaintiff was terminated for physical abuse of a resident and violation of company policy in circumstances at least arguably similar to Kuerner's and was not given any second chance. A reasonable factfinder could conclude that Christmas has presented evidence of a prima facie case of race discrimination.

Defendant has met its burden to articulate legitimate, nondiscriminatory reasons for firing Christmas. However, plaintiff's evidence raises material fact issues regarding whether the stated reasons are not true, but instead are a pretext for a discriminatory purpose. She may show pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence, meaning that the explanation is not the real reason for the adverse employment action."

Anderson v. McDonald's Restaurants of La., Inc., No. 11-992, 2012 WL 5878731, at *4 (E.D. La. Nov. 21, 2012) (quotations omitted) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); McCoy v. City of Shreveport, 492 F.3d 551, 557 (5th Cir. 2007); Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003)).

"'[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Goudeau v. Nat'l Oilwell Varco, L.P., No. 14-20241, 2015 WL 4385621, at *4 (5th Cir. July 16, 2015) (quoting Reeves, 530 U.S. at 147-48). When conflicting evidence or discrepancies in an employer's asserted nondiscriminatory reasons cast doubt on the credibility of that explanation, a reasonable factfinder could decide that "the reason is false and therefore necessarily pretextual." Burton, 2015 WL 4742174, at *10-11 (citing Laxton, 333 F.3d at 348; Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 899 (5th Cir. 2002); Gee v. Principi, 289 F.3d 342, 347-48 (5th Cir. 2002)); accord Parker, 323 F. App'x at 324, 328. Viewing the evidence in the light most favorable to Christmas, the court cannot resolve the conflicts and credibility questions in defendant's favor on summary judgment. Burton, 2015 WL 4742174, at *16; Parker, 323 F. App'x at 328.

Defendant's motion for summary judgment on plaintiff's claim of racially discriminatory termination is therefore denied.

CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that defendant's motion for summary judgment is GRANTED IN PART and that plaintiff's claim of sex discrimination and her claims of race and color discrimination based on failure to promote, unequal pay, the denial or unequal provision of training opportunities and the requirement that she patrol dark roads by herself are DISMISSED WITH PREJUDICE.

The motion is otherwise DENIED. A nonjury trial will proceed on October 5, 2015 at 10:00 a.m. as to plaintiff's remaining claim of racially discriminatory termination, with the final pretrial conference scheduled for September 24, 2015 at 4:00 p.m.

New Orleans, Louisiana, this ___28th___ day of August, 2015.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE